

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 13, 2021

**By ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     *United States* v. *Lequan Eley*, 20 CR 171 (RA)

Dear Judge Abrams,

    The Government respectfully submits this letter in advance of the defendant's sentencing, currently scheduled to proceed by videoconference on February 19, 2021 at 9:00 AM.  For the reasons set out below, the Government joins with Probation and submits that a sentence at the top of the range of 10 to 16 months, which is the applicable range pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing, in particular here, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. The Government apologizes for this untimely submission but was unable to access ECF on the evening of February 12, 2021.

**CARES Act**

    As an initial matter, the Government respectfully submits that prior to imposing sentence under Federal Rule of Criminal Procedure 32 by videoconference, pursuant to Section 15002(b)(2)(A) of the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), the Court must "find[ ] for specific reasons that the . . . sentencing . . . cannot be further delayed without serious harm to the interests of justice."  In this case, the Government views the defendant's request that the Court impose a time-served sentence as constituting sufficient "specific reasons" under the statute during the ongoing national emergency that underlies the CARES Act.

**Background**

    On March 5, 2020, the defendant was arrested and transferred from state to federal custody to be arraigned on an indictment charging him in two counts with having distributed a controlled

substance, to wit, cocaine base, on two occasions in February 2019, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (*See* Presentence Investigation Report ("PSR") at ¶ 14.) On October 30, 2020, the defendant pleaded guilty to the indictment pending against him. (*Id.* at ¶ 5.) In terms of the instant offense conduct, the Government generally relies upon the description of the offense conduct set out in the PSR, which details the allegations brought against the defendant in the underlying indictment and to which the defendant previously registered no objection. (*See id.* at ¶¶ 9-14.)

### Applicable Law

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Guidelines are not mandatory; however, it also held that a district court must "consult" the Guidelines and "take them into account" when fashioning a sentence. *Id.* at 264. As the Supreme Court has explained, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a court must proceed to consider seven factors outlined in 18 U.S.C. § 3553(a): (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) the four legitimate purposes of sentencing, *see id.* § 3553(a)(2); (iii) "the kinds of sentences available," *id.* § 3553(a)(3); (iv) the Guidelines range itself, *see id.* § 3553(a)(4); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

The statute directs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, pursuant to which the sentence needs::

(A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* § 3553(a)(2).

While a district court may not presume that an appropriate sentence lies within the Guidelines range, "the fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Gall*, 552 U.S. at 50 n.6. The relevance of the Guidelines throughout the sentencing process stems in part from the fact that, while the Guidelines are advisory, "the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives," *Rita* v. *United States*, 551 U.S. 338, 348 (2007), and the Guidelines are "the product of careful study based on extensive

empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall*, 552 U.S. at 46; *see also Rita*, 551 U.S. at 349.  To the extent a district court varies from a Guidelines sentence, "[it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance."  *Gall*, 552 U.S. at 50.

## Sentence

Here, the Government agrees with Probation that a sentence at the top of the range of 10 to 16 months—which is the applicable range pursuant to the Guidelines calculated in the PSR—would be sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.

In terms of the offense, it is true that the defendant is charged with and has admitted having sold crack on only two specific dates in February 2019; however, as described below, he was arrested a month prior in January 2019 on state charges for having possessed approximately 50 units of crack in the same location as he sold crack to an undercover police officer.  And to be clear, the undercover police officer called the defendant on both occasions to arrange the charged transactions, using a telephone number that the defendant had provided to him on an earlier occasion when the undercover police officer also purchased crack from the defendant in the same approximate location.  Further, during the second of the two charged transactions, the undercover police officer discussed conducting further transactions with the defendant, in which the defendant, as reflected in the video and audio recording of the transaction, agreed to sell the undercover police officer five grams of crack at a negotiated price of $45.00 per gram.  Thereafter, the defendant never agreed to meet with the undercover police officer again, realizing correctly, the Government believes, that the undercover police officer was a police officer or agent of law enforcement.  From these facts alone, it is fair for the Court to infer that the defendant was not simply unlucky to have been selling drugs in the lobby of the building where he lived with his young family when an undercover police officer happened to approach him to purchase drugs.  Rather, he was selling the same poison on those dates that he commonly sold there, at least during the time period of the instant offense.

In making its recommendation here, the Government is not blind to the circumstances of the defendant's upbringing and adult life on which the defendant focuses to a considerable degree in his sentencing submission (*see* Def.'s Ltr. at 1-5), and the Government, like the Court, feels sympathy for these circumstances.  Nonetheless, the Government does not view these circumstances individually or collectively as a proximate cause for the defendant having chosen to pursue on a sustained basis a life of crime, which thousands of other residents of this city who are raised in similar circumstances in the very same communities as the defendant affirmatively have chosen not to pursue because it is wrong.  In imposing a substantial sentence here, the Court appropriately sanctions the defendant for his choices just as much as it honors these other men and women for their choices.  In this sense, when considering how a sentence here may inspire respect for the law, the analytical focus belongs as much upon the law-abiding public and its perception of the criminal justice system as it does on the view of the law-breaking defendant.

A Guidelines sentence would also be sufficient, but not greater than necessary, to afford adequate deterrence to criminal conduct.  And here is where the defendant's history and characteristics, in particular his criminal history, should weigh heavily in favor of imposing a

substantial custodial sentence at the top range of the Guidelines.  As the Presentence Investigation Report notes, the defendant has previously been sentenced in connection with four prior convictions.  (*See* PSR at ¶¶ 32-35.)  In particular, the defendant has two felony convictions in the State of New York.  On the first felony conviction, the defendant was convicted in January 2012 of Robbery in the Third Degree, in violation of New York Penal Law § 160.05, and sentenced to a term of imprisonment of one year, arising from an arrest in August 2009 for his commission of a robbery in which he carried and displayed a knife.  (*See id.* at 32.)[1]  On the second felony conviction, the defendant was convicted in January 2012 of Robbery in the Second Degree, in violation of New York Penal Law § 160.10(1), and sentenced to a term of imprisonment of four years and a term of post-release supervision of three years, arising from an arrest in February 2010 for his commission of a robbery in which he and another person robbed a third person, displaying a firearm, which occurred when the defendant was on pre-trial release in connection with the state proceedings resulting in his first felony conviction.  (*See id.* at 33.)  Since his initial release to parole in or about July 2013, the defendant has also violated the terms of his parole and been remanded to state prison on multiple occasions.  (*Id.*)  In particular, (i) in September 2014, the defendant was violated and incarcerated through January 2015; (ii) in June 2015, the defendant was again violated and incarcerated through August 2015; (iii) in February 2016, the defendant was again violated and incarcerated through March 2016; and (iv) in July 2016, the defendant was again violated and incarcerated through February 2017, a remarkable record of disregard for the supervision imposed by a court in connection with a serious crime that must impact any assessment of whether the defendant is capable let alone committed to his rehabilitation.  (*See id.*)

In addition, the defendant also has two misdemeanor convictions in the State of New York, which the Government submits are also of relevance to what sentence is appropriate.  On the first misdemeanor conviction, the defendant was convicted in March 2018 of Attempted Criminal Contempt in the Second Degree, in violation of New York Penal Law §§ 110.00, 215.50(3), and sentenced to a conditional discharge and order of protection in favor of the mother of the defendant's children.  (*See id.* at 34.)  This conviction arose from an arrest in August 2017 in which that same woman reported to police that she had lost consciousness after the defendant strangled her, an incident for which he was arraigned on multiple domestic-violence charges in state court in Bronx County, New York.  (*See id.*)  In connection with these same proceedings the defendant bench warranted on one occasion.  (*See id.*)  On the second misdemeanor conviction, the defendant was convicted in October 2018 of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law § 220.03, and sentenced to a term of imprisonment of one year, which the defendant was serving at the time that he was brought on a writ into federal custody and which is anticipated to expire in or about June 2020.  (*See id.* at 35.)  This conviction arose from an arrest in January 2019 in which the defendant was found in possession of more than 50 retail units of crack inside the lobby of the same building where several weeks later the defendant sold crack to the undercover police officer, which occurred when he was on pre-trial release in connection with the state proceedings resulting in his second misdemeanor conviction.

---

[1] Because the defendant committed this robbery several days prior to his eighteenth birthday, he does not qualify as a Career Offender pursuant to U.S.S.G. § 4B1.1 because the resulting sentence is not sufficiently close in time to bring the offense within the shorter time period applicable to offenses committed prior to age eighteen.  (*See* PSR at ¶ 32.)

Finally, the Government is informed by multiple state law-enforcement agencies, including the Bronx County District Attorney's Office, that from in or about June to July 2019, the defendant was detained in connection with state proceedings arising from his arrest in June 2019 on domestic-violence related charges reported to the police in or about May 2019 again by the mother of the defendant's children, who informed police that the defendant had strangled her with a towel and punched her numerous times in the face after which the defendant threatened her in voicemail messages left on her cellphone, which state law-enforcement authorities reviewed. To be certain, these charges were subsequently dismissed and the defendant was released after the mother of the defendant's child chose not to cooperate further with state law-enforcement authorities. This domestic-violence case, which, like the prior domestic-violence case described in the preceding paragraph, involved allegations of violence committed by the defendant in the same apartment to which he now proposes that he could be released with a  time-served sentence.[2]

At bottom, the defendant is a recidivist who has repeatedly presented a threat of harm to the mother of his children, who has obtained multiple orders of protection against him (*see* PSR at ¶ 41), distributed controlled substances, and earlier committed very serious crimes of violence. It is right for the defendant to raise the difficult conditions of his detention in the MCC (*see* Def's Ltr. at 7.) However, it is for the Court to assign this factor a weight against which to measure all of the others factors, which the Government submits are uniformly aggravating and would justify a sentence far above the range of the Guidelines but certainly one at the top of the range of the Guidelines. With respect to the conditions of his confinement, the Government moreover respectfully submits that whatever mitigation those circumstances might otherwise earn the defendant, his commission of a serious offense while incarcerated that involved fighting and resulted in a substantial disciplinary sanction, which continues a pattern of such conduct when incarcerated, cancels out that mitigation. (*See* PSR at ¶¶ 8, 33.)

## Conclusion

For the reasons set out above, the Government respectfully requests that the Court sentence the defendant to a term of imprisonment at the top of the range of 10 to 16 months, which is the applicable range pursuant to the Guidelines, and impose a term of supervised release of three years, to provide every possible deterrent incentive to the defendant to refrain from committing another

---

[2] These charges brought against the defendant, who is the mother of the defendant's child, were subsequently dismissed after the same woman chose not to cooperate further with state law-enforcement authorities.

crime of violence, including domestic violence victimizing the mother of his children, or another drug trafficking or violent crime.

Respectfully,

AUDREY STRAUSS
United States Attorney

By: _Thomas John Wright_____

Thomas John Wright
Assistant United States Attorney
(212) 637-2295

cc: Sarah Aberg (Counsel to Defendant Lequan Eley) (by ECF)