# WL | Wright Law
## ATTORNEY AT LAW

---

**299 BROADWAY, SUITE 708**
**NEW YORK, NY 10007**
**OFFICE (212) 822-1419 • FACSIMILE (212) 822-1463**
www.wrightlaw.nyc

November 14, 2022

**VIA ECF**
The Honorable Ronnie Abrams
United States District Judge Southern District of New York
Thurgood Marshall, United States Courthouse
40 Foley Square
New York, New York 10007

    **Re:** *United States* **v.** *Lequan Eley 20-CR-00171* **(RA)**

Dear Judge Abrams:

  I am counsel for Lequan Eley and write the Court to raise the following issues related to the appropriate sentence regarding his Violations of Supervised Release ("VOSR"). Mr. Eley is scheduled to be sentenced on November 21, 2022, after previously admitting his guilt on June 30, 2022, to violating a number of VOSR specifications. More exactly, Mr. Eley pled guilty to violating specifications 1, 3, 4, 5, 6 and 8 as contained in his VOSR Report dated March 1, 2022.

  **A.**  **Introduction**

  The objective of this memorandum is to provide the Court background information to assist in formulating a sentence that is sufficient but not greater than necessary to comply with the vision set forth in 18 U.S.C. § 3553(a). Pursuant to the Court's authority under *United States v. Booker,* 534 U.S. 220 (2005) and 18 U.S.C. § 3553; and in light of the information set forth in the Presentence Investigation Report ("PSR"), the sentencing submissions, information contained herein, and the government's anticipated response, the defense recommends a sentence at the bottom of the United States Sentencing Guideline ("U.S.S.G." or the "Guidelines") range of eight (8) months incarceration to be followed by a two (2) year term of supervised release. *See* U.S.S.G. § 7B1.4(a).

  As the Court is aware, Mr. Eley was sentenced by Your Honor on February 19, 2021, to thirteen (13) months and one (1) day imprisonment to be followed by three (3) years of supervised release after a plea of guilty to distributing narcotics. *See* ECF # 40. Mr. Eley's supervised release began upon his release from jail on May 7, 2021, where he was reunited with his family in the

1

Bronx, NY.  Mr. Eley lived with his fiancé, Amalia Ellison, and their young children in the Bronx, where he struggled to find steady work and acclimate himself to his new-found freedom.  Mr. Eley was arrested in December of 2021 and then again in February of 2022 for crimes involving narcotics and physical disputes with his Ms. Ellison.[1]  He now appears before this Court having admitted to violations of his supervised release based on the underlying conduct of those Bronx arrests.

### B.     Sentencing Options

The parties are largely in agreement where Mr. Eley's possible sentence Guideline range fall within Chapter Seven (Violation of Supervised Release) of the U.S.S.G.  Though to be sure, there is a great chasm as to the propriety of the ultimate sentence.

Mr. Eley's Criminal History Category at his sentence was III.  *See* PSR ¶ 37.  The conduct Mr. Eley admitted to in VOSR specification 1 is a Grade B Violation of his supervised release and under criminal history category III his guideline range is 8 to 14 months imprisonment. U.S.S.G. § 7B1.4(a).  The additional conduct admitted to contained in VOSR specifications 3, 4, 5, 6 and 8 are Grade C Violations of his supervised release and under criminal history category III his guideline range is 5 to 11 months imprisonment.  Id.  Mr. Eley's original conviction was for a Class C Felony and therefore his statutory maximum imprisonment for this violation of supervised release is two (2) years. 18 U.S.C. § 3583(e)(3).

Probation recommends a sentence well above the Guideline range and requests the Court impose the maximum of 24 months. *See* VOSR Report.

It is the everlasting hope of Mr. Eley that the Court sentence him to eight (8) months imprisonment to be followed by two (2) years of supervised release along with anger management, mental health counseling and any other conditions the Court deems just and proper.

### C.     18 U.S.C. § 3553(a) Factors and Supervised Release

Supervised release is *not* an enhancement of the original sentence.  Though supervised release is "part of the penalty for the initial offense," *Johnson v. United States*, 529 U.S. 694, 700 (2000), the imposition of supervised release and the sanctions for a violation are authorized by a statute and Guidelines scheme that is separate from the regime that governs incarceration for the original offense, *see* 18 U.S.C. § 3583, and serves purposes distinct from the goals of the original punishment.  *United States v. Pettus*, 303 F.3d 480, 486 (2d Cir. 2002); *United States v. Verkhoglyad*, 516 F.3d 122, 127 (2d Cir. 2008); *United States v. McNeil*, 415 F.3d 273, 277 (2d Cir. 2005) (a sentence for a violation of supervised release is reviewed for reasonableness).

---

[1] Based on information and belief, the Bronx arrests that are the subject of this violation of supervised release were ultimately dismissed by the Bronx District Attorney's Office.  Admittedly, in light of Mr. Eley's admission to the VOSR specifications, the dismissal of those cases is of no moment for the issues before the Court.

2

In the post-*Booker* era, the Sentencing Guidelines remains the *sine qua non* of the government's sentencing solution in virtually every case.  However, this Court is not required to impose a sentence based on the Guidelines or based on any policy of the Sentencing Commission that circumvents the specific intent of Congress for individualized sentencing.  *Pepper v. United States*, 562 U.S. 476, 501 (2011).  In this case, a sentence at the bottom of the Guidelines is appropriate because the Guidelines fail to include critical factors about Mr. Eley's background, which Congress mandated must be included in arriving at the sentence to be imposed.  *See* 18 U.S.C. § 3583.  When offenders' backgrounds and characteristics are ignored, marginalized, or reduced to second-class status, the goal of informative, individualized sentencing cannot be achieved.  Rather, offenders are left to the mercy of mathematical numbers that arrive at terms of incarceration with zero empirical relationship to either punishment or the causes that brought them before the court. *See United States v. Diaz*, 2013 U.S. Dist. LEXIS 11386, at *2 (E.D.N.Y. Jan. 28, 2013).

As the Second Circuit observed in *United States v. Jones*, 551 F.3d 163, 182 (2d Cir 2008):

> "it is the district court's particular trust to ensure the uniform and constant principle of the federal sentencing tradition, specifically, that "every convicted person [be considered] as an individual and every case as a unique study in the human failings that sometimes mitigates, sometimes magnify, the crime and the punishment to ensue." (Internal citations omitted).

Sentencing is of course not an exact science.  Rather it is a fluid and dynamic process.  Its aim should be to impose a sentence that is reasonable, fair, and just given the facts of a particular case, and the facts relative to the particular person being sentenced. See, *Rita v. United States*, 551 U.S. 338 (2007), *Irizarry v. United States*, 553 U.S. 708 (2008). As discussed herein, an analysis of the § 3553(a) factors warrant the Court to exercise its discretion and impose a bottom of the Guideline sentence of eight (8) months incarceration and a two (2) year term of supervised release.

In its March 1, 2022, VOSR report addressed to the Court, Probation recommends the maximum jail sentence of twenty-four (24) months incarceration.  A sentence based on this recommendation however inherently fails to account for Mr. Eley's history and characteristics thereby running afoul of the Congressional mandate for an informative, individualized sentencing.

Supervision of Mr. Eley has proven to be demonstrably difficult in that he was unable to find consistent and steady employment and he continued to struggle with sobriety as demonstrated by positive drug tests.  More concerning is the domestic strife and violence that occurred in his home with Ms. Ellison, the mother of his four children.  Clearly, Mr. Eley needs counseling with anger management and guidance to develop healthy coping mechanisms; none of which the Metropolitan Detention Center ("MDC") is remotely able to assist him.  Mr. Eley readily concedes that he would greatly benefit from mental health treatment and well understands that a likely condition of his supervised release is some type of mental health counseling.

Mr. Eley desperately wants to have a healthy relationship with his four children and is acutely aware of the pain his poor decisions have caused them.  He is ever hopeful that upon his eventual release from jail he can be a positive role model in their young lives, fully cognizant that he has a long road toward repairing that relationship.  Mr. Eley's mother, Elizabeth Eley, is optimistic about her son's future and is willing to support him upon his release from jail.  Most importantly, Mr. Eley looks forward to proving himself as a dedicated, responsible, and loving father who will use this low point in his life to guide his children through the many pitfalls and challenges life will bring.

The foregoing is brought to the Court's attention not to excuse his conduct, as he fully accepts responsibility for his actions and remains remorseful for how his conduct continues to affect his life and his family. He is optimistic and hopeful; determined to become a productive citizen and refusing to be crippled by hopelessness or self-pity.

### C.     Conclusion

We respectfully ask the Court to sentence Mr. Eley to eight (8) months imprisonment, followed by two (2) years of supervision along with mental health counseling.  That is a significant penalty that amply punishes Mr. Eley for his offense conduct, maintains and encourages respect for the administration of justice, and serves as individual and general deterrents.  It is, in short, a sufficient, but not greater than necessary sentence.

Mr. Eley respectfully reserves the right to raise additional issues, if necessary, at the time of sentence.

> Sincerely,
> /s/
> Christopher Wright

4