

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 14, 2022

**By ECF and Hand Delivery**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *United States* v. *Lequan Eley*, 20 CR 171 (RA)

Dear Judge Abrams,

The Government respectfully submits this letter in advance of the defendant's sentencing in connection with the pending violation of supervised release proceedings, currently scheduled for November 21, 2020 at 2:00 PM. For the reasons set out below, the Government agrees with the United States Probation Office that a sentence of 24 months' imprisonment—which would constitute a variance above the applicable range pursuant to the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") as calculated by the United States Probation Office, but not the Government—and six years' supervised release is the only sentence that is sufficient, but not greater than necessary, to serve the legitimate purposes of sentencing applicable here, in particular, the need for the sentence imposed to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant. For these same reasons and with emphasis on the need for the sentence to protect the public and in particular the mother of the defendant's four children and those children themselves, the Government also agrees with the United States Probation Office that a discretionary condition of supervised release requiring the defendant not to reside with the mother of his children or those children or anywhere within 1,000 feet of their residence or residences be imposed for the entire term of supervised release in addition to the mandatory and standard conditions of supervised release.

**Background**

In terms of the original conviction and sentence, the defendant was arrested and detained on or about March 5, 2020, after a grand jury sitting in the Southern District of New York voted an indictment charging the defendant with two counts of distributing cocaine base, in a form commonly referred to as "crack," in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). On October 30, 2020, the defendant pleaded guilty to both counts. On February 19, 2021, the Court sentenced the defendant to 13 months and one day's imprisonment and three years' supervised

release. On May 7, 2021, the defendant was released to the supervision of the United States Probation Office.

In terms of the offense conduct underlying the original conviction and sentence, the Government generally relies upon the description of that offense conduct set out in the Presentence Investigation Report ("PSR"), which details the allegations brought against the defendant in the underlying indictment and to which the defendant previously registered no objection. (*See* PSR at ¶¶ 9-14.)

In terms of the defendant's criminal history, the Government similarly relies upon the description of that criminal history set out in the PSR. (*See* PSR at ¶¶ 32-35.) As the PSR highlights and as the Government previously emphasized at sentencing, the defendant has two felony convictions in the State of New York. On the first felony conviction, the defendant was convicted in January 2012 of Robbery in the Third Degree, in violation of New York Penal Law § 160.05, and sentenced to a term of imprisonment of one year, arising from an arrest in August 2009 for his commission of a robbery in which he carried and displayed a knife. (*See id.* at 32.)[1] On the second felony conviction, the defendant was convicted in January 2012 of Robbery in the Second Degree, in violation of New York Penal Law § 160.10(1), and sentenced to a term of imprisonment of four years and a term of post-release supervision of three years, arising from an arrest in February 2010 for his commission of a robbery in which he and another person robbed a third person, displaying a firearm, which occurred when the defendant was on pre-trial release in connection with the state proceedings resulting in his first felony conviction. (*See id.* at 33.) Since his initial release to parole in or about July 2013, the defendant also violated the terms of his parole and been remanded to state prison on multiple occasions. (*Id.*) In particular, (i) in September 2014, the defendant was violated and incarcerated through January 2015; (ii) in June 2015, the defendant was again violated and incarcerated through August 2015; (iii) in February 2016, the defendant was again violated and incarcerated through March 2016; and (iv) in July 2016, the defendant was again violated and incarcerated through February 2017. (*See id.*)

In addition, the defendant also has two misdemeanor convictions in the State of New York. On the first misdemeanor conviction, the defendant was convicted in March 2018 of Attempted Criminal Contempt in the Second Degree, in violation of New York Penal Law §§ 110.00, 215.50(3), and sentenced to a conditional discharge and order of protection in favor of the mother of the defendant's children. (*See id.* at 34.) This conviction arose from an arrest in August 2017 in which the mother of his children reported to police that she had lost consciousness after the defendant strangled her, an incident for which he was arraigned on multiple domestic-violence charges in state court in Bronx County, New York. (*See id.*) In connection with these same proceedings the defendant bench warranted on one occasion. (*See id.*) On the second misdemeanor conviction, the defendant was convicted in October 2018 of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law § 220.03, and sentenced to a term of imprisonment of one year, which the defendant was serving at the time that

---

[1] Because the defendant committed this robbery several days prior to his eighteenth birthday, he did not qualify as a Career Offender pursuant to U.S.S.G. § 4B1.1 because the resulting sentence was not sufficiently close in time to bring the offense within the shorter time period applicable to offenses committed prior to age eighteen. (*See* PSR at ¶ 32.)

he was brought on a writ into federal custody and arrested on or about March 5, 2020. (*See id.* at 35.)  This conviction arose from an arrest in January 2019 in which the defendant was found in possession of more than 50 retail units of crack inside the lobby of the same building where several weeks later the defendant sold crack to the undercover police officer, which occurred when he was on pre-trial release in connection with the state proceedings resulting in his second misdemeanor conviction.

Additionally, as the Government previously noted during the defendant's original sentencing, the Government is informed by multiple state law-enforcement agencies, including the Bronx County District Attorney's Office, that from in or about June to July 2019, the defendant was detained in connection with state proceedings arising from his arrest in June 2019 on domestic-violence related charges reported to the police in or about May 2019 again by the mother of the defendant's children, who informed police that the defendant had strangled her with a towel and punched her numerous times in the face after which the defendant threatened her in voicemail messages left on her cellphone, which state law-enforcement authorities reviewed.  To be certain, these charges were subsequently dismissed and the defendant was released after the mother of the defendant's child chose not to cooperate further with state law-enforcement authorities. This domestic-violence case, like the prior domestic-violence case described in the preceding paragraph, involved allegations of violence committed by the defendant in the same apartment where occurred both sets of domestic violence specifications at issue in these violation of supervised release proceedings.[2]

Finally, in terms of the actual conduct underlying the specifications alleged in these violation of supervised release proceedings, which the defendant has now admitted, specifically Specifications 1, 3, 4, 5, 6, and 8, the Government generally relies upon the facts alleged in the Violation of Supervised Release Report dated March 1, 2022, which followed the issuance of an arrest warrant by this Court on or about February 19, 2022, the Saturday of Presidents' Day Weekend, the same day that the defendant was arrested police officers of the New York City Police Department who responded to the apartment in which the defendant lived with the mother of his children and their four children, the youngest of whom was born less than two weeks earlier.  In addition to this record, the Government respectfully requests only that the Court review the body-worn camera video recording enclosed here on a compact disc, which depicts the arrival of police officers at this apartment, which record the Government will address further at the time of sentencing and which reflects a shocking evidence of the most unconscionable domestic abuse. (*See* Exhibit 1 at 00:00-17:30.)

## Applicable Law

Because the Court has found that the defendant both possessed a controlled substance in violation of the conditions of his supervised release, the Court must revoke his current term of supervised release, which expires on May 6, 2024, and require the defendant to serve a term of imprisonment not to exceed two years.  *See* 18 U.S.C. § 3583(e)(3) and (g)(1) and (3).

---

[2] These charges brought against the defendant by the mother of the defendant's children after she chose not to cooperate further with state law-enforcement authorities.

In imposing a sentence upon the revocation of the defendant's current term of supervised release, the Court must consider certain of the sentencing factors outlined in 18 U.S.C. § 3553(a), specifically: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1); (ii) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct," "to protect the public from further crimes of the defendant," and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner," *see id.* § 3553(a)(2)(B), (C), and (D); (iii) the sentencing range established in the case of a violation of supervised release by the United States Sentencing Commission, *see id.* § 3553(a)(4)(B); (v) any relevant policy statement by the United States Sentencing Commission, *see id.* § 3553(a)(5); (vi) "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and (vii) "the need to provide restitution to any victims," *id.* § 3553(a)(7).

As stated in the preceding paragraph, in assessing what is an appropriate sentence, the Court must consider both the applicable sentencing range and relevant policy statements set by the United States Sentencing Commission. *See* 18 U.S.C. § 3553(a)(4)(B), (a)(5). The United States Probation Office calculates a Guidelines range applicable here as 8 to 14 months because the defendant committed multiple Grade B violations and because the defendant was in Criminal History Category III at the time of his original sentencing. *See* U.S.S.G. § 7B1.4(a).

The Government respectfully disagrees with this calculation of the Guidelines range. The Government believes that the conduct that the defendant admitted in Specification 1 constitutes a Grade A violation with a resulting Guideline range of 18 to 24 months' imprisonment. Pursuant to U.S.S.G. § 7B1.1(a)(1)(A)(ii), a Grade A violation is "*conduct constituting* (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a controlled substance offense." (emphasis added). As the United States Sentencing Commission made explicit in Application Note 1 to U.S.S.G. § 7B1.1, "[t]he grade of violation does not depend upon the conduct that is the subject of criminal charges or of which the defendant is convicted in a criminal proceeding. Rather, the grade of the violation is to be based on the defendant's actual conduct." And the Second Circuit has recently reaffirmed in this context of assessing the grade of a violation of supervised release that the touchstone is indeed the defendant's actual conduct. *See United States v. Ramos*, 979 F.3d 994, 1000-01 (2d Cir. 2020). Here, Specification 1 itself refers to both conduct—the possession of crack cocaine with intent to sell the same—and a particular state offense that this conduct violates—New York Penal Law § 220.16. To be sure, that state offense is just one of the many different state offenses under Article 220 of the New York Penal Law applicable to the defendant's actual conduct and similarly just one of those state offenses for which he was originally arrested by local law enforcement. In any event, in these violation of supervised release proceedings, the defendant has allocuted to the conduct in admitting this specification. At bottom, he has admitted that his actual conduct was the possession of crack cocaine with the intent to sell the same. Although a violation of New York Penal Law § 220.16 is punishable by imprisonment exceeding one year, the tortured legacy of *United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018) has seen that case's holding regarding the scope of what constitutes a controlled substance under New York Penal Law § 220.31 expand to reach what constitutes a narcotic drug under New York Penal § 220.16. For the record, the Government maintains, as it continues to maintain in one or more cases pending appeal before the Second Circuit, that the possession with intent to sell a narcotic drug under New York Penal Law § 220.16(1) is a

controlled substance offense pursuant to U.S.S.G. § 4B1.2(b). The Court, however, need not reach this issue, on which the Government, to be sure, has proved universally unsuccessful with its arguments in the United States District Court for the Southern District of New York. Instead, the Court need only look to the actual and now admitted conduct of the defendant—possession of crack cocaine with intent to sell the same—and find that this actual conduct also constitutes a federal offense punishable by a term of imprisonment exceeding one year, namely Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C). *See United States v. Garcia-Cartagena*, 953 F.3d 14, 24 (1st Cir. 2020) ("once the government identifies a . . . 'controlled substance offense' . . . the court must look at the defendant's actual conduct to determine (by a preponderance of the evidence) whether that 'conduct constituted' (that is, whether he committed) the covered offense"). Thus, because the defendant plainly violated Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) with his actual conduct, Specification 1 is a Grade A violation and the Guidelines range is 18 to 24 months' imprisonment.

Regardless of this dispute as to the applicable Guidelines range, in providing guidance to district courts charged with imposing a revocation sentence, the United States Sentencing Commission stated, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. Ch. 7, Pt. A(3)(b); *see also United States v. Sindima*, 488 F.3d 81, 86 (2d Cir. 2007) (discussing policy statement).

Pursuant to 18 U.S.C. § 3583(h), "When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment." Here, because the term of supervised release authorized by 21 U.S.C. § 841(b)(1)(C) is life, the Court may impose any term of supervised release that it deems appropriate. *See* 18 U.S.C. § 3583(h).

With respect to the condition of supervised release that the Court may impose, in addition to the mandatory and so-called "standard" and "special" conditions, the Court may also impose discretionary conditions:

> The court may impose other conditions of supervised release to the extent that such conditions (1) are reasonably related to (A) the nature and circumstances of the offense and the history and characteristics of the defendant; (B) the need for the sentence imposed to afford adequate deterrence to criminal conduct; (C) the need to protect the public from further crimes of the defendant; and (D) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth above and are consistent with any pertinent policy statements issued by the Sentencing Commission.

U.S.S.G. § 5D.13(b).

## Sentence

In considering the appropriate sentence here, the Government respectfully submits that analyzing the issue through the organizational structure of the three principal sets of specifications on which the defendant awaits sentencing clarifies both the extent to which the sentence must deter the defendant and protect the public as well as the extent to which the defendant completely and utterly disregarded the conditions of his prior term of supervised release and thereby betrayed the trust of the Court.

*First*, with respect to the drug-trafficking specification from December 2021, it is of course of salient relevance here that the defendant was originally convicted in this case of having distributed crack inside the very same building in front of which he was arrested in possession of 25 retail units of crack here.  Less than one year after having been released from a substantial term of imprisonment in federal prison, served amidst the height of the pandemic, the defendant was thus found back in the Bronx engaged in the same criminal activity.  With this violative conduct alone, the defendant has demonstrated that notwithstanding the strongest of deterrent measures, he will continue to traffic the same poison in the same community, and thus must be sentenced now so as to deter him from this conduct and protect that community.  In this sense, as specified below, the Government respectfully urges the Court not only to require the defendant to serve a substantial term of imprisonment but also to serve a substantial further term of supervised release thereafter and indeed one double the original term of supervised release imposed by the Court.  The Government hopes that such a term of supervised release will now better deter the defendant in the future because these violation of supervised release proceedings will have acquainted him with the specific consequences for disregarding the conditions of supervised release, which in this case he wholly flouted.

*Second*, with respect to the first domestic-violence specification in November 2021, the defendant has admitted that he got upset with the mother of his children following a verbal dispute.  When she asked him to leave their shared home, he punched in the face.

*Third*, with respect to the second domestic-violence set of specifications in February 2022, the defendant has admitted that he strangled the mother of his children and imprisoned her for multiple days inside her bedroom where she was recuperating from having less than two weeks earlier given birth to their fourth child, for whom she was caring in this same room where she was forced to urinate on the floor.

The nature of these second and third categories of specifications proven here is as ugly and dark as it is foreboding for a future in which the defendant and the mother of his children may be brought in contact for years by the relationship and children whom they share.  In the starkest sense, the defendant presents a clear and present danger to the life of the mother of his children, who in the wake of being rescued by police officers, as their body-worn camera recordings show, begs for a different future for herself and her children, one free of the defendant.  Without hyperbole, the Government respectfully submits that the Court is in a position now, based upon the sentence that it crafts here, to save this member of the public's life and spare her and her children from further predation at the hands of the defendant.  For this reason, the Government respectfully urges the Court to impose a substantial further term of supervised release that may assure the Court of its own ability to monitor the defendant's conduct toward the mother of his

Page 7

children upon his eventual release from confinement. It is for the benefit of the mother of his children and, perhaps most of all, those children themselves, that the Government and the United States Probation Office respectfully request that the Court impose the proposed discretionary condition of supervised release, barring the defendant from residing with his family or in their immediate vicinity, a very serious restriction but one that is specifically tailored to the record before the Court and imposes the minimum deprivation of liberty necessary to achieve the desired protection of the public.[3]

Take as a whole, the admitted specifications against the defendant illustrate that in the less than ten months that he was at liberty and under the conditions of supervised release, he substantially failed to abide by those conditions in serious and repeated ways that require this Court to sentence him in a manner that will deter him, protect the public that he has harmed, and ensure that he honors the trust of the Court in the future.

### Conclusion

For the reasons set out above, the Government respectfully requests that the Court revoke the term of supervised release against the defendant, require the defendant to serve a term of imprisonment of 24 months, and require the defendant thereafter to serve a term of supervised release of six years, with a discretionary condition of supervised release requiring the defendant not to reside with the mother of his children or those children or anywhere within 1,000 feet of their residence or residences.

Respectfully,

DAMIAN WILLIAMS
United States Attorney

By: *Thomas John Wright*
Thomas John Wright
Assistant United States Attorney
(212) 637-2295

Enclosure: Compact Disc (by hand delivery)

cc: Elisha Rivera (United States Probation Office) (by email)
  Daveena Tumasar (United States Probation Office) (by email)
  Christopher Wright (Counsel to Defendant Lequan Eley) (by ECF)

---

[3] The Government and the United States Probation Office view this restriction on liberty as no greater in kind and more curtailed in degree than the blanket discretion afforded by the "standard" condition of supervised release that "[t]he defendant shall live at a place approved by the probation officer." U.S.S.G. § 5D1.3(c)(5). Here, the United States Probation Office is not prepared to approve any residence that the requested discretionary condition would bar.